1
2
3
4
5          **UNITED STATES DISTRICT COURT**
6              **DISTRICT OF NEVADA**
7
8  STEVEN P. SION,                      )
                                        )
9              Plaintiff,               )      Case No.  2:12-cv-01323-GMN-GWF
                                        )
10 vs.                                  )      **FINDINGS AND**
                                        )      **RECOMMENDATION**
11 MICHAEL J. ASTRUE, COMMISSIONER      )
   OF SOCIAL SECURITY,                  )
12                                      )
              Defendant.                )
13 _____  )

14         This matter comes before the Court on Plaintiff Steven Sion's ("Plaintiff") complaint for

15 judicial review of administrative action by the acting Commissioner of Social Security denying his

16 claim for disability benefits under Title II of the Social Security Act.  Specifically, Plaintiff seeks

17 reversal of the Administrative Law Judge's ("ALJ") decision dated April 26, 2011 denying his

18 claim for disability benefits.

19         Plaintiff's Complaint (#1) was filed on July 26, 2012.  Defendant's Answer (#7) was filed

20 on October 29, 2012, along with a Notice of Filing the Administrative Record ("AR") (#8).

21 Plaintiff filed his Motion for Remand (Doc. #14) on February 8, 2013.  Defendant filed his

22 Response (#22) on July 10, 2013.  Plaintiff filed his Reply (#25) on August 20, 2013.

23                        **BACKGROUND**

24    **A.    Procedural History**

25         Plaintiff filed an application for a period of disability, disability insurance benefits, and

26 supplemental security income on October 21, 2008.  AR 115.  Plaintiff alleges a disability onset

27 date of March 1, 2007.  *Id.*  The Commissioner denied Plaintiff's claims at the initial

28 determination, and denied reconsideration of that denial on March 19, 2009.  AR 68.  Plaintiff

requested an appeal before an ALJ on March 23, 2009.  AR 72.  The ALJ conducted a hearing on

September 10, 2010.  AR 31.  The ALJ issued an unfavorable decision on April 26, 2011.  AR 13.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  This

matter has been referred to the undersigned for a report of findings and recommendations under 28

U.S.C. §§ 636 (b)(1)(B) and (C).

**B.     Factual History**

Plaintiff was born on October 17th, 1953.  AR 36.  Prior to the alleged disability onset date

of March 1, 2007, Plaintiff owned his own advertising/promotion business.  AR 37.  Plaintiff has

also indicated that he is an attorney on inactive status with the Nevada and Connecticut state bars.

AR 136.  In the last 15 years, Plaintiff had no earnings in 2000, 2002, 2004, 2005, 2007, 2008, or

2009.  The main ailment giving rise to Plaintiff's alleged disability is degenerative disc disease, the

earliest evidence for which in the record dates October 19, 2006.  AR 357.  Plaintiff initially

requested to amend the onset date to September 6, 2007 in light of a brain hemorrhage that

occurred that day, AR 124, but withdrew this request at the hearing.  AR 46.

**i.     *Treatment***

**a.     Back/spine**

The earliest medical evidence in the record is a normal EMG and nerve conduction study of

the bilateral upper and lower extremities with no eletrophysiological evidence of a cervical or

lumbar radiculopathy or mononeuropathy, conducted on October 19, 2006.  AR 357.  An October

25, 2006 spine MRI demonstrated minimal anterolisthesis of L5 on S1 and a right L5 pars defect

associated with moderate bilateral neural foraminal stenosis.  AR 354.  There was mild narrowing

of the central canal at the level of L2-3 secondary to prominent posterior epidural fat.  *Id.*  X-rays

from October 26, 2006 showed mild diffuse straightening of the lumbar spine with anterior

osteophytosis but no compression fracture deformity or spondylolithesis.  AR 354.

On November 20, 2006, Plaintiff was referred to Franco Lee, MD at the Southern Nevada

Pain Center.  AR 351.  Plaintiff complained of neck pain that radiated to the right arm, and stated

that he had previously undergone an anterior C5-6 and C6-7 laminectomy infusion.  *Id.*  In

association with his neck pain, Plaintiff alleged he also had a history of chronic low back pain for

1   many years. *Id*. Plaintiff told Dr. Lee that his pain caused numbness of the anterior thighs

2   bilaterally, but that he did not wish to take any pain medications. *Id*. Dr. Lee's impressions were

3   that Plaintiff's back pain might be secondary to disc bulging, and also from lumbar spondylosis.

4   AR 352. Dr. Lee also reported that Plaintiff had a pars defect on the right L5 area, and

5   anterolisthesis of L5-S1. *Id*. Noting that Plaintiff said he could manage his pain without prescribed

6   pain medication, Dr. Lee recommended physical therapy and steroid injections to his lower back at

7   the L5-S1 and L4-5 bilateral facet. AR 353. On December 20, 2006, Plaintiff had bilateral L4-5

8   and L5-S1 lumbar facet joint steroid injections, bilateral L5 selective nerve root blocks, bilateral

9   L5-S1 lumbar epidural steroid injections, and facet anthrogram, epidurogram, and flouroscopy for

10  his lumbar degenerative disc disease. AR 347-48. Plaintiff was assessed with pars defect and

11  lumbar degenerative disc disease at the Southern Nevada Pain Center on January 15, 2007, and was

12  prescribed Celebrex, Cymbalta, and MSContin. AR 302. On February 12, 2007, Plaintiff reported

13  that he felt "ten times better" after taking the medication. AR 299. At a followup appointment at

14  the Western Regional Center for Brain & Spine Surgery, William Smith, MD reported that Plaintiff

15  "[did] not have any complaints" and was making good progress. AR 207.

16      Plaintiff returned to the Southern Nevada Pain Center on June 29, 2007, indicating he had

17  burning pain in his thighs and an aching pain in his lower back at all times of the day. AR 297.

18  The notes also indicate that Plaintiff intended to participate in a regular exercise and diet program

19  to mitigate the symptoms. *Id.* At an August 20, 2007 followup, Plaintiff again complained of neck

20  pain and expressed interest in additional injections. AR 295. The notes indicate that his

21  medications provided him adequate relief. *Id.* His diagnoses after the summer 2007 visits were

22  degenerative disc disease of the lumbar spine, post laminectomy syndrome, and cervical HAs. AR

23  296. The planned course of treatment was for Plaintiff to continue taking Cymbalta, to have a CT

24  scan of the cervical spine, and to receive more injections. *Id.*

25      Plaintiff received bilateral C4-5 and C5-6 facet joint steroid injections, C6-7 cervical

26  epidural steroid injections, L5-S1 lumbar epidural steroid injections, and facet anthrogram,

27  epidurogram, and flouroscopy for his cervical degenerative disc disease, post laminectomy pain

28  syndrome, and lumbar spondylosis on September 21, 2007. AR 293. On October 16, 2007,

1    Plaintiff reported an "aching, throbbing, burning, nagging" pain, for which Hydrocodone injections

2    seemed to help the most.  AR 293, 291.  Plaintiff received additional injections on October 26,

3    2007, AR 289, and continued to visit the Southern Nevada Pain Center and receive injections

4    beyond his date last insured of December 31, 2007.

5                    **b.    Hemorrhage**

6            On September 6, 2007, Plaintiff was admitted to the Summerlin Hospital emergency room

7    complaining of aphasia.  AR 180.  The initial clinical impressions were Transient-Ischemic Attack,

8    CVA (stroke), and hemorrhagic.  AR 181.  A CT scan of Plaintiff's brain showed a well-defined

9    hyperdensity in the left frontal lode adjacent to the frontal horn of the lateral ventricle suggestive of

10   a small amount of hemorrhage.  AR 187, 190.  A CT scan of Plaintiff's cervical spine on

11   September 6, 2007 demonstrated his status post fusion at C5 through T1.  AR 185.  Plaintiff was

12   transferred to the intensive care unit at University Medical Center ("UMC") the same day.  AR 181.

13           Plaintiff's admission diagnoses at UMC were headache, abnormal MRI, and peripheral

14   vascular disease.  AR 192.  Plaintiff's CT showed evidence of an intraparaenchymal hemorrhage

15   and neurosurgery was consulted.  AR 193.  Stuart Kaplan, MD recommended an MRI and MRA of

16   Plaintiff's brain.  *Id.*  The September 7, 2007 MRI revealed a 10mm by 8mm chronic hemorrhage

17   within the left frontal periventricular white matter, involving the corpus collosum.  AR 201.  The

18   MRI was compatible with a hemorrhage from a cavernous angioma, which did not appear acute.

19   *Id.*  The MRA confirmed the same, and revealed no discrete aneurysm.  AR 202.  Plaintiff was

20   stable for discharge the day after admission, and was instructed to return for a followup

21   appointment in one week.  AR 192.  At the followup appointment, Dr. Smith recommended

22   Plaintiff start on Dilantin for one year, but raised no other concerns.  AR 206.

23           **ii.    *Medical Opinions***

24           State examiner James Rose, MD completed a residual functional capacity ("RFC")

25   assessment on December 1, 2008.  AR 310.  Dr. Rose opined that Plaintiff could occasionally lift

26   20 pounds, frequently lift 10 pounds, stand and/or walk for six hours in an 8-hour workday, sit

27   about six hours in an 8-hour workday, and push and/or pull an unlimited amount.  AR 304.  Dr.

28   Rose also opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, and kneel, and

                                                    4

1    never climb ladders, crouch, or craws.  AR 305.  Dr. Rose imposed no manipulative limitations.

2    AR 306.  Dr. Rose opined that Plaintiff should avoid concentrated exposure to extreme cold and

3    heat and fumes, odors, dusts, gasses, poor ventilation, etc.  AR 307.  Dr. Rose concluded that the

4    "evidence does not support full permanent disability rating."  AR 308.

5         Treating physician Daniel Kim, MD completed an RFC assessment on March 6, 2009.  AR

6    328.  Dr. Kim opined that Plaintiff could stand, walk, sit, and push less than 2 ½ hours per day, and

7    could not bend or kneel.  AR 327.  Dr. Kim also opined that Plaintiff could lift and carry only 10

8    pounds.  *Id.*  Dr. Kim stated that Plaintiff required an assistive device to get up and down, and that

9    Plaintiff would need to take more than two unscheduled breaks in an 8-hour workday.  AR 328.

10   Dr. Kim also stated that the restrictions he enumerated began in March of 2008.  *Id.*

11        Consultative examiner Trevor Nogueira completed an RFC assessment on November 15,

12   2010.  AR 410.  Dr. Nogueira opined that Plaintiff could occasionally lift and carry 20 pounds, and

13   frequently lift and carry 10 pounds.  AR 405.  Dr. Nogueira further opined that Plaintiff could sit

14   for a total of six hours in an 8-hour workday, stand for a total of one hour, and walk for a total of

15   two hours.  AR 406.  Dr. Nogueira also stated that Plaintiff could only occasionally reach, handle,

16   or feel with his right hand, and could only occasionally climb stairs or kneel.  AR 407-08.  Dr.

17   Nogueira also restricted Plaintiff from unprotected heights or moving mechanical parts.  AR 409.

18        **iii.**   ***Administrative Hearing***

19        At the hearing, Plaintiff testified that he became unable to work when he had an "episode

20   where [he] couldn't speak or see," which turned out to be the brain hemorrhage discussed above.

21   AR 38.  Due to the resulting long term medication he was prescribed, Plaintiff testified that he had

22   no short-term memory, could not focus, and slept for 18 hours a day.  AR 39.  Plaintiff also

23   testified that he is in "a lot of pain every day" and suffers from sporadic migraines.   AR 43, 46.

24   Plaintiff testified further that his right hand is paralyzed from a cervical fusion.  AR 45.  Plaintiff

25   stated that he does not use a cane or wear any braces or supports.  AR 47.  He stated he is only

26   comfortable in a "special chair" that he has at home.  AR 48.  Plaintiff testified he can stand for "10

27   or 15 minutes" before having to rest, and can sit for an hour before having to get up or lay down.

28   AR 52.  Plaintiff stated he could lift 20 pounds.  AR 53.  Vocational Expert Kenneth Lister

5

1   characterized Plaintiff's past relevant work as advertising manager, which is sedentary and highly
2   skilled.  AR 55.

3   **C.   ALJ's Decision**

4       The ALJ issued his decision on April 26, 2011.  The ALJ found that Plaintiff was not
5   disabled, because Plaintiff possessed sufficient RFC to perform his past relevant work. In reaching
6   this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f).
7   The ALJ first noted that Plaintiff last met the insured status on December 31, 2007, which neither
8   party disputes.  AR 18.  The ALJ then found that Plaintiff did not engage in any substantial gainful
9   activity from the alleged onset date of March 1, 2007 through the date last insured ("DLI") of
10  December 31, 2007.  *Id.*  The ALJ determined through the DLI Plaintiff had severe impairments in
11  the forms of degenerative disc disease of the cervical spine, pars defect, and obesity.  The ALJ next
12  found that Plaintiff did not have an impairment or combination of impairments that met or
13  medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1
14  ("Listing of Impairments").  The ALJ then found that Plaintiff had the RFC through the DLI to
15  perform the full range of sedentary work defined in 20 C.F.R. § 404.1567(a).   Finally, the ALJ
16  found that through the DLI, Plaintiff was capable of performing his past relevant work as an
17  advertising manager.  AR 24.

18      In reaching this conclusion, the ALJ noted that because Plaintiff's earning record shows he
19  acquired sufficient quarters of coverage to remain insured only through December 31, 2007,
20  Plaintiff must establish disability on or before that date.  In determining Plaintiff's sedentary RFC,
21  the ALJ gave a considerably detailed account of Plaintiff's ailments and treatment.  *See* AR 19-24.
22  The ALJ recounted all of the spinal injections, x-rays, office visits, and other treatments found in
23  the record.  *Id.*  The ALJ also included Plaintiff's hemorrhage in his RFC determination, although
24  he did not find it or any of its associated conditions were severe impairments.  AR 21-22.  The ALJ
25  did not consider any of the physicians' RFC assessments because none of them were completed
26  prior to the date last insured.  AR 24.

27      The ALJ also rejected much of Plaintiff's testimony in making his RFC determination.  In
28  so doing, the ALJ made several credibility determinations.  The ALJ stated that Plaintiff "did not

6

generally receive the type of medical treatment one would expect for a totally disabled individual." AR 23.  The ALJ noted, for example, that Plaintiff "refused to take any narcotic based pain-relieving medications in spite of his allegations of quite limiting pain." *Id.*  The ALJ similarly discounted Plaintiff's medication side-effects testimony, finding that the medical records do not corroborate the allegations. *Id.*  The ALJ continued that Plaintiff "has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present 'constantly' or all of the time." *Id.*  Furthermore, the ALJ noted that Plaintiff provided inconsistent information regarding his past work.  The record shows Plaintiff variously reported his work as an inactive attorney, a semi-retired attorney, and a lawyer.  AR 135, 352, AR 193.  He did not list lawyer as his past relevant work on his Adult Disability Report or his Work Background Report, however.  AR 129, 165.  The ALJ stated that Plaintiff's "failure to be candid regarding his past relevant work reflects negatively on his credibility." *Id.*  Next, the ALJ noted that Plaintiff stated he travels to California to receive Botox injections for his migraines, AR 135, despite his allegedly disabling back and neck pain. *Id.*  The ALJ also considered that Plaintiff provided inconsistent information regarding the last day that he worked.  AR 24.  Finally, the ALJ stated that "[a] review of [Plaintiff's] work history shows that [he] worked only sporadically prior to the alleged disability onset date, which raises a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments."  AR 24.

## DISCUSSION

### I.    Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole and consider both

adverse and supporting evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).  *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision.  *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings.  *Lewin* v. *Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.    Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

> (a)    he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

> (b)    the impairment renders the claimant incapable of performing the work that the claimant previously

1
2

performed and incapable of performing any other substantial gainful employment that exists in the national economy.

3 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

4     The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179,

5 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must

6 demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

7 determinable physical or mental impairment which can be expected . . . to last for a continuous

8 period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an

9 inability to perform his or her prior work, the burden shifts to the Commissioner to show that the

10 claimant can perform other substantial gainful work that exists in the national economy. *Batson*,

11 157 F.3d at 721.

12     **III.**    **Analysis of the Plaintiff's Alleged Disability**

13     Social Security disability claims are evaluated under a five-step sequential evaluation

14 procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir.

15 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*,

16 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any

17 point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under

18 the first step, the Secretary determines whether a claimant is currently engaged in substantial

19 gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b).

20 Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If

21 the impairment is not severe, the claimant is not considered disabled. *Id.* § 404.152(c). Third, the

22 claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt.

23 P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a

24 listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth

25 inquiry is whether the claimant can perform past relevant work. *Id.* § 416.920(e). If the claimant

26 can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant

27 cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by

28 demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the

1  Secretary cannot meet his or her burden, the claimant is entitled to disability benefits.  *Id.* §

2  404.1520(a).  Plaintiff now asserts the ALJ improperly rejected medical opinions and Plaintiff's

3  hearing testimony.

4         **A.**      **The ALJ properly considered Plaintiff's combination of impairments**

5        At step two, it is the claimant's burden to show that he has a severe medically determinable

6  impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  After a claimant meets this burden,

7  during the ALJ's analysis of the claimant's RFC, the ALJ considers "the 'combined effect' of all

8  the claimant's impairments without regard to whether any such impairment, if considered

9  separately, would be of sufficient severity."  *Howard v. Barnhart*, 341 F.3d 1006, 1010 (9th Cir.

10  2003).  If an ALJ errs by failing to consider an impairment at step two, but does consider the

11  impairment in his step four RFC analysis, such error is harmless.  *Lewis v. Astrue*, 498 F.3d 909,

12  911 (9th Cir. 2007).

13        Here, Plaintiff argues the ALJ erred by failing to consider his cerebral hemorrhage at step

14  two.  The ALJ found that Plaintiff had severe impairments in the forms of degenerative disc

15  disease, pars defect, and obesity.  Plaintiff therefore met his burden to show he has a severe

16  medically determinable impairment.  Because Plaintiff's hemorrhage was within the medical

17  evidence, the ALJ was required to consider it in his step four RFC analysis whether or not it would

18  separately be considered severe.  Indeed, at step four the ALJ gave a detailed analysis of the

19  treatment for Plaintiff's hemorrhage.  *See* AR 21-22.  The ALJ addressed the extent of the ailment

20  and its symptoms.  *Id.*  The ALJ also considered Plaintiff's medications and their side effects as

21  required under *Howard*, above.  For the credibility reasons detailed below, however, and because

22  the medical records did not corroborate Plaintiff's allegations, the ALJ rejected them.  AR 23.

23  After these considerations, the ALJ "extend[ed] the maximum benefit of the doubt to [Plaintiff] and

24  [found] that through the date last insured, he was capable of performing the full range of work at

25  the sedentary exertional level, based upon his combination of impairments."  AR 24.  The Court

26  finds that the ALJ's conclusion was supported by substantial evidence in the record.  Because the

27  ALJ included Plaintiff's hemorrhage and his medications in his step four RFC analysis, any error

28  he committed by failing to consider the hemorrhage at step two was harmless.

1

**B.**     **The ALJ's finding that Plaintiff was able to perform the full**
**range of sedentary work was supported by substantial evidence**
2          **in the record.**

3              **i.**     ***The ALJ's failure to consider medical opinions***

4          In *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001), the Ninth Circuit set

5    forth the rules regarding the weight that is to be accorded to different types of medical opinions:

6                   Title II's implementing regulations distinguish among the opinions of
                    three types of physicians: "(1) those who treat the claimant (treating
7              physicians); (2) those who examine but do not treat the claimant
                    (examining physicians); and (3) those who neither examine nor treat
8              the claimant [but who review the claimant's file] (non-examining [or
                    reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
9              1995); *see* 20 C.F.R. §404.1527(d).  Generally, a treating physician's
                    opinion carries more weight than an examining physician's, and an
10             examining physician's opinion carries more weight than a reviewing
                    physician's.  *Lester*, 81 F.3d at 830.  20 C.F.R. § 404.1527(d).  In
11             addition, the regulations give more weight to opinions that are
                    explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3),
12             and to the opinions of specialists concerning matters relating to their
                    specialty over that of nonspecialists.

13

14         "Although the contrary opinion of a non-examining medical expert does not alone constitute a

15   specific legitimate reason for rejecting a treating or examining physician's opinion, it may

16   constitute substantial evidence that is consistent with other independent evidence in the record."

17   *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d

18   747, 752 (9th Cir. 1989)).  The ALJ is responsible for determining credibility and resolving

19   conflicts and ambiguities in the medical evidence.  *Magallanes*, 881 F.2d at 750.  An ALJ must

20   provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining

21   physician.  *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984).  And like the opinion of a

22   treating doctor, "the opinion of an examining doctor, even if contradicted by another doctor, can

23   only be rejected for specific and legitimate reasons that are supported by substantial evidence in the

24   record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  In determining whether an ALJ

25   provided a legitimate reason for rejecting an opinion, though, courts are not deprived from their

26   faculties "for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes,*

27   881 F.2d at 755.

28   . . .

11

Because a medical opinion is retrospective is not necessarily cause to reject it.  *See, e.g.,*

*Bilby v. Schweike*r, 762 F.2d 716, 719 (9th Cir. 1985).  "Medical evaluations made after the

expiration of a claimant's insured status" can be relevant "to an evaluation of the pre-expiration

condition."  *Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988).  The *Smith* court relied on

*Poe v. Harris*, 644 F.2d 721, 723 n. 2 (8th Cir. 1981), which held that in a case of disabling back

pain, evidence subsequent to the last date of eligibility "is pertinent evidence in that it may disclose

the severity and continuity of impairments existing before the earning requirement date."  In *Bilby*,

the ALJ rejected a diagnosis of disabled prior to the DLI because it was made after the DLI.  762

F.2d 716, 719.  The Ninth Circuit held the ALJ erred, both because the retrospective diagnosis

included an onset date prior to the DLI and because there was "well-substantiated, unanimous, and

uncontradicted diagnoses" from numerous experts.  *Id.*

Furthermore, as regards retrospective diagnoses, SSR 83-20 provides as follows:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.
>
> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. However, before contacting these people the claimant's permission must be obtained. The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record.

Here, Plaintiff contends the ALJ erred by failing to consider the opinions of treating

physician Dr. Kim and examining physician Dr. Nogueira.  Dr. Kim completed his RFC assessment

on March 6, 2009, and Dr. Nogueira completed his on November 15, 2010.  The ALJ did not

1    consider either opinion, noting that none "concerning [Plaintiff's] residual functional capacity prior

2    to the date last insured" existed in the record.  AR 24.  Although Dr. Kim's opinion postdates

3    Plaintiff's DLI by only three months, it specifies that the enumerated restrictions began in March of

4    2008.  Furthermore, unlike the diagnosis in *Bilby*, Dr. Kim's opinion is the outlier in its severity.

5    Dr. Nogueira's opinion postdates the DLI by nearly three years, and does not specify whether it

6    applies to the insured period.  Because neither opinion has retrospective value in determining

7    whether Plaintiff was disabled before the DLI, the ALJ provided adequate reasoning for rejecting

8    the opinions by stating that none prior to the DLI existed.

9                     ***ii.      The ALJ's rejection of Plaintiff's testimony***

10           Plaintiff also asserts the ALJ failed to provide sufficient reasons for finding that Plaintiff's

11   statements and testimony regarding the severity of his symptoms were not credible.  Plaintiff argues

12   that the ALJ's credibility analysis and findings do not satisfy the standard under Ninth Circuit case

13   law.  In *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (2009), the court states that

14   under Ninth Circuit case law,

15                  [w]ithout affirmative evidence showing that the claimant is
                    malingering, the Commissioner's reasons for rejecting the claimant's
16                  testimony must be clear and convincing.  If an ALJ finds that a
                    claimant's testimony relating to the intensity of his pain and other
17                  limitations is unreliable, the ALJ must make a credibility
                    determination citing the reasons why the testimony is unpersuasive.
18                  The ALJ must specifically identify what testimony is credible and
                    what testimony undermines the claimant's complaints.  In this regard,
19                  questions of credibility and resolutions of conflicts in the testimony
                    are functions solely of the Secretary.
20
                    *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F. 3d 595, 599 ( 9th Cir.
21                  1999) (citations omitted).

22   *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) further states:

23                  In evaluating the credibility of pain testimony after a claimant
                    produces objective medical evidence of an underlying impairment, an
24                  ALJ may not reject a claimant's subjective complaints based solely
                    on a lack of medical evidence to fully corroborate the alleged severity
25                  of pain.  *See Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991).
                    The rationale for this restriction is that pain testimony may establish
26                  greater limitations than can medical evidence alone. *See* SSR 96–7p
                    (1996).  In determining credibility, an ALJ may engage in ordinary
27                  techniques of credibility evaluation, such as considering claimant's
                    reputation for truthfulness and inconsistencies in claimant's
28                  testimony.  *See Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th

                                                    13

Cir.2001).  Additionally, Social Security Ruling 88–13 lists a number of factors the ALJ may consider:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

*Bunnell,* 947 F.2d at 346 (quoting SSR 88–13 (1988)) (superceded by SSR 95–5p (1995)); *see also Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting pain testimony must be clear and convincing.  *See Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995).  The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints —"[g]eneral findings are insufficient." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks omitted).

Here, the ALJ engaged in a lengthy and thorough determination of Plaintiff's credibility.  The ALJ stated that Plaintiff "did not generally receive the type of medical treatment one would expect for a totally disabled individual."  AR 23.  Furthermore, the ALJ noted that Plaintiff provided inconsistent information regarding his past work.  *Id.*  The ALJ stated that Plaintiff's "failure to be candid regarding his past relevant work reflects negatively on his credibility."  *Id.*  Next, the ALJ noted that Plaintiff stated he travels to California to receive Botox injections for his migraines, AR 135, despite his allegedly disabling back and neck pain.  *Id.*  Finally, the ALJ stated that "[a] review of [Plaintiff's] work history shows that [he] worked only sporadically prior to the alleged disability onset date, which raises a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments."  AR 24.  These are the kinds of "ordinary techniques of credibility evaluation" contemplated by *Burch*, and constitute sufficiently clear and compelling reasons to discount Plaintiff's subjective testimony.  Accordingly,

## **RECOMMENDATIONS**

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand (#14) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-motion for Summary Judgment (#22) be **granted**.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  Appeals may been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 6th day of January, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

15